IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

EXXONMOBIL OIL CORPORATION,           )
A New York Corporation                )
                                      )
                  Plaintiff,          )
                                      )
        v.                            )      Case No. 08 CV 3064
                                      )
D CONSTRUCTION MANAGEMENT             )      Judge Norgle
COMPANY, INC., an Illinois Corporation, and )
PT FERRO CONSTRUCTION COMPANY,        )      Magistrate Judge Schenkier
INC., An Illinois Corporation, and    )
TRANSYSTEMS CORPORATION, a            )
Missouri Corporation, and CONSOER     )
TOWNSEND ENVIRODYNE ENGINEERS,        )
INC., a Delaware Corporation          )
                                      )
                  Defendants.         )

**MEMORANDUM IN SUPPORT OF THE MOTION OF CONSOER TOWNSEND
ENVIRODYNE ENGINEERS, INC. TO DISMISS COUNT V OF THE COMPLAINT**

I.    <u>**Introduction**</u>

This case arises out of the construction activities of D Construction Management

Company, Inc. ("DCon Mgmt" or "General Contractor") and its subcontractor, PT Ferro

Construction Company, Inc. ("PT Ferro" or "Subcontractor") on a road project near Joliet,

Illinois.  Consoer Townsend Envirodyne Engineers, Inc. ("CTE") should never have been joined

to this lawsuit.

Plaintiff, Exxonmobil Oil Corporation ("Exxonmobil"), has a refinery bordering I-55,

which is approximately two miles south of the intersection of I-55 and I-80 and is bisected by

Arsenal Road. (*See* Exxonmobil's Complaint, ¶ 8 at 3.)  At some time prior to May 24, 2007,

Will County engaged Transystems Corporation to plan, develop and design the replacement and

widening of Arsenal Road (the "Project"). *Id.*, ¶ 11.  Will County hired DCon Mgmt to act as

general contractor for the Project and DCon Mgmt employed PT Ferro to excavate and remove pavement for the Project.

On or about May 24, 2007, PT Ferro encountered two sets of conduits underneath Arsenal Road that ran between the two sections of Exxonmobil's property. *Id.*, ¶¶ 16, 22 and 23 at 4-5. PT Ferro severed the first set of conduits, causing a power outage to Exxonmobil's water filtration plant, but did not cut through the second set of conduits. *Id.* Exxonmobil seeks money damages from all defendants for the property damage and associated expenses incurred due to PT Ferro's conduct.

Conspicuously absent from the setting is CTE. Yet, Exxonmobil creatively interjects CTE into this dispute by alleging that CTE had an obligation to prevent the situation from occurring. This dispute, however, legally has nothing to do with, and does not implicate in any way, CTE, which Will County hired merely to perform observation services. In Count V of its Complaint, Exxonmobil tries to coble together a negligence claim against CTE, but it is rooted in speculative and conclusory allegations, and fails as a matter of law to state any valid claim against CTE. Count V of the Complaint should be summarily dismissed.

## II.   Argument

### 1.   Speculative Allegations are Insufficient to Survive a Rule 12(b)(6) Motion to Dismiss.

In order to survive a Rule 12(b)(6) motion to dismiss, "a plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Robinson v. Stanley*, Case No. 06 C 5158, 2008 U.S. Dist. LEXIS 47597, *24 (N.D. Ill., June 18, 2008) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)). "To be cognizable, the factual allegations contained within a complaint must raise a claim for relief 'above the speculative level.'" *Patel v. Boghra*, Case No. 07 C 6557, 2008 U.S. Dist. LEXIS 47207, *12 (N.D. Ill., June 18, 2008) (quoting

*Twombly*, 127 S. Ct. at 1965)).  Mere conclusory allegations which lack factual assertions will

not suffice nor withstand a Rule 12(b)(6) motion to dismiss.  *Cunningham v. Vil. of Sauget*, Case

No. 06 C 570, 2007 U.S. Dist. LEXIS 62282, *12 (S.D. Ill., Aug. 23, 2007).  Stated another way,

a plaintiff must plead specific facts, rather than "mere conclusory allegations" or "unwarranted

deductions of fact."  *Mack v. Environmental Restoration, LLC*, Civil Action No. 07-1268, 2007

WL 3071593, * 2 (E.D. La. Oct. 19, 2007), *quoting Guidry v. Bank of LaPlace*, 954 F.2d 278,

281 (5th Cir. 1992).

**2.**     **Exxonmobil's allegations with respect to CTE assert obligations that are not imposed by CTE's contract with Will County.**

Exxonmobil's negligence claim fails as against CTE for a very simple reason – CTE

never had the obligations that Exxonmobil seeks to impose.  More than twenty years ago the

Illinois Supreme Court held that even when the engineer is being sued in tort, the scope of the

engineer's duty is nevertheless defined by the engineer's contract for its services. *Ferentchak v.*

*Village of Frankfort*, 105 Ill.2d 474, 482, 475 N.E.2d 822, 826 (1985).  Consequently,

Exxonmobil must establish that CTE's contract with Will County required CTE to perform the

duty that it claims CTE breached.  A review of CTE's contract with Will County shows that CTE

had none of the obligations Exxonmobil alleges CTE breached.

On March 30, 2006, the County Board of Will County, Illinois passed a resolution in

which the County Board approved an agreement for construction engineering services between

Will County and CTE (the "Observation Contract"). (*See* Resolution 06-110, a true and correct

copy is attached to this Memorandum as Exhibit A.)  The only obligations that CTE assumed

pursuant to the Observation Contract are as follows:

1.(k.)   Furnish or cause to be furnished

(1)    A resident engineer, inspectors and other technical personnel to perform the following work:

a.    Continuous observation of the work and the contractor's operations for compliance with the plans and specifications as construction proceeds, but the ENGINEER does not guarantee the performance of the contract by the contractor.

c.    Maintain a daily record of the contractor's activities throughout construction including sufficient information to permit verification of the nature and cost of changes in plans and authorized extra work.

d.    Supervision of inspectors, proportioning engineers and other technical personnel and the taking and submitting of material samples.

f.    Preparation and submission to the [Local Agency] in the required form and number of copies, all partial and final payment estimates, change orders, records and reports required by the [Local Agency]and the [Illinois Department of Transportation].

3.    To attend conferences at any reasonable time when requested to do so by the [Local Agency] or representative of the [Illinois Department of Transportation].

8.    To submit, upon request by the [Local Agency] or the [Illinois Department of Transportation] a list of the personnel and the equipment he/she proposes to use in fulfilling the requirements of this AGREEMENT.

(*See* Ex. A, at 3-5, 8.)  Exhibit 1 to Resolution 06-110 specifically deletes the terms in

paragraphs 1.k.(1)(b & e) and Articles 2 and 4-7. (Ex. A, at 8.)  Furthermore, CTE and Will

County agreed that "[CTE] does not assume any responsibility or liability for the means,

methods and procedures of any construction contractor or subcontractor, nor does [CTE] assume

any responsibility for the safety of any individuals, other than its own employees." *Id.*

Exxonmobil has alleged that CTE committed one or more of the following acts or

omissions:

A.    Failed to properly identify [Exxonmobil's] property along side and under Arsenal Road;

B.    Failed to properly follow established procedures to collect and disseminate data for subsurface utilities;

C.    Failed to properly protect [Exxonmobil's] property from damage;

D.  Failed to properly coordinate, supervise and train employees, subcontractors and contractor to prevent damage to [Exxonmobil's] property;

E.  Failed to undertake and implement safety procedures and protocols, and to disseminate same to contractors and subcontractors requiring that [] they (contractors and subcontractors) immediately cease all work upon encountering unknown facilities while working adjacent to the refinery.

(*See* Complaint, ¶ 50 at 10-11.)  When considering the allegations of Exxonmobil's complaint, one can only conclude that Exxonmobil did not have the Observation Contract before it drafted the Complaint.  While the other defendants may have had any or all of these obligations (as Exxonmobil alleges in the other counts of the Complaint), CTE did not.  Consequently, Count V of the Complaint should be dismissed with prejudice.

**III.    Conclusion**

This case is a garden-variety negligence claim that should be between Exxonmobil and the parties that actually were involved in the incident that gives rise to it.  It should never have been brought against CTE, which had no contract to perform any of the obligations asserted and is not liable to Exxonmobil under any valid legal theory.  While Exxonmobil may want as many defendants as possible to improve its chances of recovery, that desire simply does not give rise to a cognizable claim against CTE.  For the foregoing reasons, Count V of the Complaint should be dismissed with prejudice.

Respectfully submitted,

/s/ Scott J. Smith
Scott J. Smith (# 6238132)
Seyfarth Shaw LLP
131 S. Dearborn St.
Suite 2400
Chicago, IL  60603-5803
Telephone:  (312) 460-5000
Facsimile:  (312) 460-7000

*Attorneys for Defendant Consoer Townsend Envirodyne Engineers, Inc.*

Public Works & Transportation Committee
Resolution 06-110



CTE

### RESOLUTION OF THE COUNTY BOARD
### WILL COUNTY, ILLINOIS

Re:  Authorizing Approval of Professional Services
Agreement for Construction Engineering

WHEREAS, the Public Works Committee requested construction engineering services for the resident engineering and construction supervision for constructing C.H. 17 (Manhattan-Arsenal Road) from I-55 Ramps to Baseline Road, Section 00-00117-12-RP, County Board District #6; and

NOW THEREFORE BE IT RESOLVED, that the County of Will enter into an agreement for construction engineering services with Consoer Townsend Environdyne Engineers, Inc., 303 East Wacker Drive, Suite 600, Chicago, Illinois 60601-5212 for C.H. 17 (Manhattan-Arsenal Road) from I-55 Ramps to Baseline Road, Section 00-00117-12-RP; and

BE IT FURTHER RESOLVED, that the compensation for the resident engineering services be according to the actual construction engineering costs as noted in the agreement.

BE IT FURTHER RESOLVED, that the County Executive and County Clerk of Will County are hereby authorized to execute said agreement subject to the review and approval by the Will County State's Attorney.

BE IT FURTHER RESOLVED, that the clerk is hereby directed to transmit four (4) copies of said agreement to the district office of the Illinois Department of Transportation through the office of the County Engineer.

Adopted by the Will County Board this 16th day of March, 2006.

Vote: Yes  23   No  0   Pass  0     (SEAL)

Nancy Schultz Voots
Will County Clerk

Approved this  30  day of  March  , 2006

Lawrence M. Walsh
Will County Executive



**EXHIBIT**

A



Resolution 06-110
Page 2

Page 3                    Resolution 06-110

| Municipality | L<br>O<br>C<br>A<br>L<br><br>A<br>G<br>E<br>N<br>C<br>Y | ⊙ **Illinois Department**<br>**of Transportation**<br><br>**Preliminary/Construction**<br>**Engineering Services**<br>**Agreement**<br>**For**<br>**Motor Fuel Tax Funds** | C<br>O<br>N<br>S<br>U<br>L<br>T<br>A<br>N<br>T | Name<br>Consoer Townsend Envirodyne Engr. |
|---|---|---|---|---|
| Township | | | | Address<br>303 East Wacker Dr. Suite 600 |
| County<br>Will | | | | City<br>Chicago |
| Section<br>00-00117-12-RP | | | | State<br>IL 60601-5276 |

THIS AGREEMENT is made and entered into this _16th_ day of _March_ , _2006_ between the above Local Agency (LA) and Consultant (ENGINEER) and covers certain professional engineering services in connection with the improvement of the above SECTION. Motor Fuel Tax Funds, allotted to the LA by the State of Illinois under the general supervision of the State Department of Transportation, hereinafter called the "DEPARTMENT", will be used entirely or in part to finance ENGINEERING services as described under AGREEMENT PROVISIONS.

---

### Section Description

Name    Arsenal Road        Route  CH 17   Length _____ KM( 2.08  Miles)(Structure No. _____ )

Termini   I 55 Ramps to Baseline Road

Description
Provide construction administration services which include: attend public information meeting, attend preconstruction meeting, review contractor's prposed construction schedule and list of subcontractors, bserve construction activities performed by the contractor, prepare all construction payment estimates, change orders, records and conduct final inspection and all other services required to bring the project to completion.

---

### Agreement Provisions

**The Engineer Agrees subject to the modifications shown in EXHIBIT 1,**

1.    To perform or be responsible for the performance of the following engineering services for the LA in connection with the proposed improvement herein before described, and checked below:

   a. ☐    Make such detailed surveys as are necessary for the preparation of detailed roadway plans.

   b. ☐    Make stream and flood plain hydraulic surveys and gather high water data and flood histories for the preparation of detailed bridge plans.

   c. ☐    Make or cause to be made such soil surveys or subsurface investigations including borings and soil profiles and analyses thereof as may be required to furnish sufficient data for the design of the proposed improvement. Such investigations are to be made in accordance with the current requirements of the DEPARTMENT.

   d. ☐    Make or cause to be made such traffic studies and counts and special intersection studies as may be required to furnish sufficient data for the design of the proposed improvement.

   e. ☐    Prepare Army Corps of Engineers Permit, Division of Water Resources Permit, Bridge waterway sketch and/or Channel Change sketch, Utility plan and locations and Railroad Crossing work agreements.

   f. ☐    Prepare Preliminary Bridge Design and Hydraulic Report, (including economic analysis of bridge or culvert types) and high water effects on roadway overflows and bridge approaches.

   Note  Four copies to be submitted to the Regional Engineer

BLR 05512 (Rev. 7/05)

Page 4                    Resolution 06-110

g. ☐   Make complete general and detailed plans, special provisions, proposals and estimates of cost and furnish the LA with five (5) copies of the plans, special provisions, proposals and estimates. Additional copies of any or all documents, if required shall be furnished to the LA by the ENGINEER at his actual cost for reproduction.

h. ☐   Furnish the LA with survey and drafts in quadruplicate of all necessary right-of-way dedications, construction easements and borrow pit and channel change agreements including prints of the corresponding plats and staking as required.

i. ☐   Assist the LA in the receipt and evaluation of proposals and the awarding of the construction contract.

j. ☐   Furnish or cause to be furnished:

    (1)   Proportioning and testing of concrete mixtures in accordance with the "Manual of Instructions for Concrete Proportioning and Testing" issued by the Bureau of Materials and Physical Research, of the DEPARTMENT and promptly submit reports on forms prepared by said Bureau.

    (2)   Proportioning and testing of bituminous mixtures (including extracting test) in accordance with the "Manual of Instructions for Bituminous Proportioning and Testing" issued by the Bureau of Materials and Physical Research, of the DEPARTMENT, and promptly submit reports on forms prepared by said Bureau.

    (3)   All compaction tests as required by the specifications and report promptly the same on forms prepared by the Bureau of Materials and Physical Research.

    (4)   Quality and sieve analyses on local aggregates to see that they comply with the specifications contained in the contract.

    (5)   Inspection of all materials when inspection is not provided at the sources by the Bureau of Materials and Physical Research, of the DEPARTMENT and submit inspection reports to the LA and the DEPARTMENT in accordance with the policies of the said DEPARTMENT.

k. ☒   Furnish or cause to be furnished

    (1)   A resident engineer, inspectors and other technical personnel to perform the following work:  (The number of such inspectors and other technical personnel required shall be subject to the approval of the LA.)

        a.   Continuous observation of the work and the contractor's operations for compliance with the plans and specifications as construction proceeds, but the ENGINEER does not guarantee the performance of the contract by the contractor.

        b.   Establishment and setting of lines and grades.

        c.   Maintain a daily record of the contractor's activities throughout construction including sufficient information to permit verification of the nature and cost of changes in plans and authorized extra work.

        d.   Supervision of inspectors, proportioning engineers and other technical personnel and the taking and submitting of material samples.

        e.   Revision of contract drawings to reflect as built conditions.

        f.   Preparation and submission to the LA in the required form and number of copies, all partial and final payment estimates, change orders, records and reports required by the LA and the DEPARTMENT.

2.   That all reports, plans, plats and special provisions to be furnished by the ENGINEER pursuant to this agreement will be in accordance with the current standard specifications and policies of the DEPARTMENT, it being understood that all such reports, plats, plans and drafts shall before being finally accepted, be subject to approval by the LA and the said DEPARTMENT.

3.   To attend conferences at any reasonable time when requested to do so by the LA or representatives of the DEPARTMENT.

4.   In the event plans, surveys or construction staking are found to be in error during the construction of the SECTION and revisions of the plans or survey or construction staking corrections are necessary, the ENGINEER agrees that he will perform such work without expense to the LA, even though final payment has been received by him.  He shall give immediate attention to these changes so there will be a minimum delay to the contractor.

5.   The basic survey notes and sketches, charts, computations and other data prepared or obtained by the ENGINEER pursuant to this agreement will be made available upon request to the LA or the DEPARTMENT without cost and without restriction or limitations as to their use.

6.   To make such changes in working plans, including all necessary preliminary surveys and investigations, as may be required after the award of the construction contract and during the construction of the improvement.

BLR 05512 (Rev. 7/05)

Page 5                    Resolution 06-110

7. That all plans and other documents furnished by the ENGINEER pursuant to the AGREEMENT will be endorsed by him and will show his professional seal where such is required by law.

8. To submit, upon request by the LA or the DEPARTMENT a list of the personnel and the equipment he/she proposes to use in fulfilling the requirements of this AGREEMENT.

**The LA Agrees,**

1. To pay the Engineer as compensation for all services performed as stipulated in paragraphs 1a, 1g, 1i, 2, 3, 5 and 6 in accordance with one of the following methods indicated by a check mark:

   a ☐  A sum of money equal to _____ percent of the awarded contract cost of the proposed improvement as approved by the DEPARTMENT.

   b. ☐  A sum of money equal to the percentage of the awarded contract cost for the proposed improvement as approved by the DEPARTMENT based on the following schedule:

   Schedule for Percentages Based on Awarded Contract Cost

   | Awarded Cost | Percentage Fees | |
   |---|---|---|
   | Under   $50,000 | _____ | (see note) |
   | | _____ | % |
   | | _____ | % |
   | | _____ | % |
   | | _____ | % |
   | | _____ | % |

   Note:    Not necessarily a percentage.  Could use per diem, cost-plus or lump sum.

2. To pay for services stipulated in paragraphs 1b, 1c, 1d, 1e, 1f, 1h, 1j and 1k of THE ENGINEER AGREES at the hourly rates stipulated below for personnel assigned to this SECTION as payment in full to the ENGINEER for the actual time spent in providing these services the hourly rates to include profit, overhead, readiness to serve, insurance, social security and retirement deductions.  Traveling and other out-of-pocket expenses will be reimbursed to the ENGINEER at his actual cost.  Subject to the approval of the LA, the ENGINEER may sublet all or part of the services provided under paragraphs 1b, 1c, 1d, 1e, 1f, 1j and 1k of THE ENGINEER AGREES.  If the ENGINEER sublets all or a part of this work, the LA will pay the cost to the ENGINEER plus a five (5) percent service charge. "Cost to ENGINEER" to be verified by furnishing the LA and the DEPARTMENT copies of invoices from the party doing the work.  The classifications of the employees used in the work should be consistent with the employee classifications for the services performed.  If the personnel of the firm including the Principal Engineer perform routine services that should normally be performed by lesser-salaried personnel, the wage rate billed for such services shall be commensurate with the work performed.

   | **Grade Classification of Employee** | **Hourly Rate** |
   |---|---|
   | Principal Engineer | _____ |
   | Resident Engineer | _____ |
   | Chief of Party | _____ |
   | Instrument Man | _____ |
   | Rodmen | _____ |
   | Inspectors | _____ |
   | _____ | _____ |
   | _____ | _____ |
   | _____ | _____ |

The hourly rates itemized above shall be effective the date the parties, hereunto entering this AGREEMENT, have affixed their
hands and seals and shall remain in effect until _____ .  In event the services of the ENGINEER extend
beyond _____ , the hourly rates will be adjusted yearly by addendum to this AGREEMENT to compensate for increases or decreases in the salary structure of the ENGINEER that are in effect at that time.

BLR 05512 (Rev. 7/05)

Page 6                    Resolution 06-110

3.  That payments due the ENGINEER for services rendered pursuant to this AGREEMENT will be made as soon as practicable after the services have been performed, in accordance with the following schedule:

    a.  Upon completion of detailed plans, special provisions, proposals and estimate of cost - being the work required by paragraphs 1a through 1g under THE ENGINEER AGREES - to the satisfaction of the LA and their approval by the DEPARTMENT, 90 percent of the total fee based on the above fee schedule and the approved estimate of cost.
    b.  Upon award of the contract for the improvement by the LA and its approval by the DEPARTMENT, 100 percent of the total fee (excluding any fees paragraphs 1j and 1k of the ENGINEER AGREES), based on the above fee schedule and the awarded contract cost, less any previous payment.
    c.  Upon completion of the construction of the improvement, 90 percent of the fee due for services stipulated in paragraphs 1j and 1k.
    d.  Upon completion of all final reports required by the LA and the DEPARTMENT and acceptance of the improvement by the DEPARTMENT, 100 percent of the total fees due under this AGREEMENT, less any amounts previously paid.

    By mutual agreement, partial payments, not to exceed 90 percent of the amount earned, may be made from time to time as the work progresses.

4.  That should the improvements be abandoned at any time after the ENGINEER has performed any part of the services provided for in paragraphs 1a and 1g, and prior to the completion of such services the LA shall reimburse the ENGINEER
    for his actual costs plus _____ percent incurred up to the time he is notified in writing of such abandonment "actual cost" being defined as material costs plus actual payrolls, insurance, social security and retirement deductions. Traveling and other out-of-pocket expenses will be reimbursed to the ENGINEER at his actual cost.

5.  That should the LA require changes in any of the detailed plans, specifications or estimates (except for those required pursuant to paragraph 4 of THE ENGINEER AGREES) after they have been approved by the DEPARTMENT, the LA will pay the ENGINEER for such changes on the basis of actual cost plus _____ percent to cover profit, overhead and readiness to serve - "actual cost" being defined as in paragraph 4 above. It is understood that "changes" as used in this paragraph shall in no way relieve the ENGINEER of his responsibility to prepare a complete and adequate set of plans.

6.  That should the LA extend completion of the improvement beyond the time limit given in the contract, the LA will pay the ENGINEER, in addition to the fees provided herein, his actual cost incurred beyond such time limit - "actual cost" being defined as in paragraph 4 above.

**It is Mutually Agreed,**

1.  That any difference between the ENGINEER and the LA concerning the interpretation of the provisions of this AGREEMENT shall be referred to a committee of disinterested parties consisting of one member appointed by the ENGINEER one member appointed by the LA and a third member appointed by the two other members for disposition and that the committee's decision shall be final.

2.  This AGREEMENT may be terminated by the LA upon giving notice in writing to the ENGINEER at his last known post office address. Upon such termination, the ENGINEER shall cause to be delivered to the LA all drawings, specifications, partial and completed estimates and data if any from traffic studies and soil survey and subsurface investigations with the understanding that all such material becomes the property of the LA. The ENGINEER shall be paid for any services completed and any services partially completed in accordance with Section 4 of THE LA AGREES.

3.  That if the contract for construction has not been awarded one year after the acceptance of the plans by the LA and their approval by the DEPARTMENT, the LA will pay the ENGINEER the balance of the engineering fee due to make 100 percent of the total fees due under the AGREEMENT, based on the estimate of cost as prepared by the ENGINEER and approved by the LA and the DEPARTMENT.

4.  That the ENGINEER warrants that he/she has not employed or retained any company or person, other than a bona fide employee working solely for the ENGINEER, to solicit or secure this contract and that he/she has not paid or agreed to pay any company or person, other than a bona fide employee working solely for the ENGINEER, any fee, commission, percentage, brokerage fee, gifts or any other consideration contingent upon or resulting from the award or making of this contract. For breach or violation of this warranty the LA shall have the right to annul this contract without liability.

Page 7                                    Resolution 06-110

IN WITNESS WHEREOF, the parties have caused this AGREEMENT to be executed in quadruplicate counterparts, each of which shall be considered as an original by their duly authorized offices.

Executed by the LA:

Will County _____ of the

(Municipality/Township/County)

ATTEST:

By _Nancy Schultz Voots_
Nancy Schultz Voots        County    Clerk

(Seal)

State of Illinois, acting by and through its
Will County Board

By _Lawrence M. Walsh_
Lawrence M. Walsh
Title:        County Executive

Executed by the ENGINEER:

Consoer Townsend Envirodyne Engineers, Inc.

ATTEST:

By _Michael C. Kolloway_
Michael R. Kolloway
Title:    Sr. Vice President/ Secretary

By _C. Wayne Swafford_
C. Wayne Swafford
Title: Sr. Vice President

| Authorized MFT Expenditure |
| --- |
| APR 1 8 2006 |
| Date |
| Department of Transportation |
|  |
| Regional Engineer |

BLR 05512 (Rev. 7/05)

## EXHIBIT 1

On Page 2 under **"The Engineer Agrees"** <u>Delete</u> the following non applicable articles:

    1) 1.k (1) b & e

    2) Articles 2, 4, 5, 6 & 7

On Page 3 and 4 under **"The LA Agrees"** <u>Delete</u> the following non applicable articles:

    1)  1a
    2)  1b
    3)  Articles 3, 4  and  5

On Page 3 under the **"The LA Agrees"** <u>Add</u> the following:

1) **Basis of Payment**

    The **LA** will compensate the **ENGINEER** on a cost plus fixed fee basis according to the Schedule of Compensation contained in <u>Exhibit 2</u> of this agreement for the successful completion of the services. The upper limit of compensation will be $1,760,270.

2) **Method of Payment**

    The **ENGINEER** must submit monthly invoices to the **LA** for labor and other direct and indirect costs as billed, as outlined in the Schedule of Compensation in <u>Exhibit 2</u>. The invoices must be signed, dated and must be in such other detail as the **LA** requests. The **ENGINEER** must not submit invoices for less than $500 unless a particular invoice is for last payment related to closeout of services.

On Page 4 under **"It is Mutually Agreed "** <u>Add</u>:

5. It is acknowledged and agreed that the **ENGINEER** does not assume any responsibility or liability for the means, methods and procedures of any construction contractor or subcontractor, nor does the **ENGINEER** assume any responsibility for the safety of any individuals, other than its own employees.

# EXHIBIT - 2

**WILL COUNTY**
**COST ESTIMATE OF CONSTRUCTION SERVICES**
**SUMMARY SHEET**

Page 9      Resolution 06-110

CONSULTANT: Consoer Townsend Envirodyne Engineers, Inc (CTE)
PROJECT: Arsenal Road (I-55 Ramps to Baseline Road)
Section No.: 00-00117-12-RP

DATE: February 1, 2006

COMPLEXITY FACTOR: _____ 0

| Firm Name (1) | Projected Hours (2) | Total Avg. Hourly Rate (3) | Payroll (4) | Burden & Overhead Percent (5) | Burden & Overhead Total (5) | Direct Costs (6) | Fixed Fee (7) | Services By Others (8) | Total (9) | Percent of Grand Total (10) |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 Resident Engineer | 4586 | $37.20 | $170,599 | 135.22% | $230,684 | | $56,895 | | $458,178 | 26.03% |
| 2 Senior Inspector | 4266 | $32.87 | $140,223 | 135.22% | $189,610 | | $46,764 | | $376,597 | 21.39% |
| 3 Inspector | 3786 | $30.76 | $116,467 | 135.22% | $157,473 | | $38,838 | | $312,768 | 17.77% |
| 4 Inspector | 3234 | $28.73 | $92,913 | 135.22% | $125,637 | | $30,986 | | $249,536 | 14.18% |
| 5 Adminstration & Management | 578 | $69.47 | $40,154 | 135.22% | $54,296 | | $13,391 | | $107,841 | 6.13% |
| 6 Design Servicesduring Construction | | | | | | | | $34,871 | $34,871 | 1.98% |
| 7 Material Testing/ Field Testing | | | | | | | $75,000 | | $75,000 | 4.26% |
| 8 Vehicles: 1553 Veh, Day | | | | | | | $55,908 | | $55,908 | 3.17% |
| 9 Field Books, Radios, Etc. | | | | | | | $9,000 | | $9,000 | 0.51% |
| 10 Field Survey | | | | | | | $80,571 | | $80,571 | 4.58% |
| 11 | | | | | | | | | | |
| 12 | | | | | | | | | | |
| 13 | | | | | | | | | | |
| 14 | | | | | | | | | | |
| 15 | | | | | | | | | | |
| 16 | | | | | | | | | | |
| 17 | | | | | | | | | | |
| 18 | | | | | | | | | | |
| 19 | | | | | | | | | | |
| 20 | | | | | | | | | | |
| GRAND TOTALS | 16450 | | $560,346 | | $757,700 | $220,479 | $186,874 | $34,871 | $1,760,270 | 100.00% |

2/1/2006 12:53 PM

Village of Elwood
**COST ESTIMATE OF CONSTRUCTION SERVICES**
Direct Costs

CONSULTANT: Consoer Townsend Envirodyne Engineers, Inc (CTE)
PROJECT: Arsenal Road (US Rte 55 to Baseline Road)
Section No.: 00-00117-12-RP

DATE: January 16,2006

|  | Description (1) | Unit (2) | Quantity (3) | Unit cost (4) | Total Cost (5) |
|---|---|---|---|---|---|
| 1 | Vehicles | Veh. Day | 1553 | $ 36.00 | $ 55,908 |
| 2 | Radios | Month | 70 | $ 100.00 | $ 7,000 |
| 3 | Field Books | Each | 200 | $ 10.00 | $ 2,000 |
| 4 |  |  |  | $ | - |
| 5 |  |  |  |  |  |
| 6 |  |  |  |  |  |
| 7 |  |  |  |  |  |
| 8 |  |  |  |  |  |
| 9 |  |  |  |  |  |
| 10 |  |  |  |  |  |
| 11 |  |  |  |  |  |
| 12 |  |  |  |  |  |
| 13 |  |  |  |  |  |
| 14 |  |  |  |  |  |
| 15 |  |  |  |  |  |
| 16 |  |  |  |  |  |
| 17 |  |  |  |  |  |
| 18 |  |  |  |  |  |
| 19 |  |  |  |  |  |
| 20 |  |  |  |  |  |
|  | TOTAL |  |  |  | $ 64,908 |

Resolution 06-110
Page 11

Arsenal Rd. Joliet, Il. Jan 06

Revised 01/18/06
Revised 02/01/06

**2006**

| | March | April | May | June | July | August | September | October | November | December | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 4@40 | 4@40 | 5@58 | 4@58 | 5@58 | 4@58 | 4@58 | 4@40 | 4 @ 40 | |
| Resident Engineer | | 160 | 232 | 290 | 232 | 290 | 232 | 232 | 160 | 160 | 1988 |
| Insp./Documentation | | 160 | 232 | 290 | 232 | 290 | 232 | 232 | 160 | 160 | 1988 |
| Inspector | | | 232 | 290 | 232 | 290 | 232 | 232 | 160 | 160 | 1828 |
| Inspector | | | 232 | 290 | 232 | 290 | 232 | 232 | 160 | | 1666 |
| Project Manager | | 32 | 32 | 40 | 32 | 40 | 32 | 32 | 16 | 10 | 266 |
| Survey Crew (3 Men) | | 150 | | | | | 150 | | | | 300 |

**2007**

| | January | February | March | April | May | June | July | August | September | October | November | December | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 4@ 40 | 4@ 40 | 4@ 40 | 4@58 | 5@58 | 4@58 | 4@58 | 5@58 | 4@58 | 5@58 | 4@ 40 | 4@ 40 | |
| Resident Engineer | 160 | 160 | 160 | 232 | 290 | 232 | 232 | 290 | 232 | 290 | 160 | 160 | 2598 |
| Insp./Documentation | | | 160 | 232 | 290 | 232 | 232 | 290 | 232 | 290 | 160 | 160 | 2278 |
| Inspector | | | | 232 | 290 | 232 | 232 | 290 | 232 | 290 | 160 | | 1958 |
| Inspector | | | | | 290 | 290 | 232 | 290 | 232 | 290 | | | 1566 |
| Project Manager | | 16 | | 32 | 40 | 32 | 32 | 32 | 32 | 40 | 32 | 16 | 312 |
| Survey Crew (3 men) | | | | 100 | | | | | 200 | | | | 300 |

Resolution 06-110
Page 12

# COST ESTIMATE OF CONSULTANT SERVICES

ROUTE  Arsenal Road
PROJECT  Design Support Services
SECTION  00-00117-12-RP
COUNTY  Will County
JOB NO.

FIRM  TRANSYSTEMS CORPORATION

OVERHEAD RATE  153.07%

COMPLEXITY FACTOR  0

DATE  1/17/2006

| ITEM | MANHOURS (A) | PAYROLL (B) | OVERHEAD & FRINGE BENE (C) | IN-HOUSE DIRECT COSTS (D-1) | OUTSIDE DIRECT COSTS (D-2) | FIXED FEE (E) | SERVICES BY OTHERS (F) | TOTAL (G) | % OF GRAND TOTAL (H) |
|---|---|---|---|---|---|---|---|---|---|
| 1. RFI Responses | 144 | 5,602 | 8,575 | - | - | 1,868 | - | 16,045 | 46.0% |
| 2. Shop Drawing Review | 80 | 3,220 | 4,929 | - | - | 1,074 | - | 9,223 | 26.5% |
| 2. Field Support and Meetings | 80 | 2,987 | 4,572 | 945 | - | 1,129 | - | 9,603 | 27.5% |
| | | | | | | | | | |
| TOTALS | 304 | 11,809 | 18,076 | 945 | - | 4,071 | - | 34,871 | 100.0% |

Resolution 06-110
Page 13

ROUTE  Arsenal Road
PROJECT  Design Support Services
SECTION  00-00117-12-RP
COUNTY  Will County
JOB NO.

## AVERAGE HOURLY PROJECT RATES

FIRM  TRANSYSTEMS CORPORATION   DATE  1/17/2006

| PAYROLL CLASSIFICATION | AVG HOURLY RATES | ITEM 1 RFI Responses | | | ITEM 2 Shop Drawing Review | | | ITEM 3 Field Support and Meetings | | | ITEM 4 | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | HOURS | % PART. | WGTD RATE | HOURS | % PART. | WGTD RATE | HOURS | % PART. | WGTD RATE | HOURS | % PART. | WGTD RATE |
| Principal In Charge | 60.00 | 0 | 0.0 | $0.00 | 0 | 0.0 | $0.00 | 0 | 0.0 | $0.00 | | | |
| Senior Project Manager | 58.24 | 24 | 16.7 | $9.71 | 0 | 0.0 | $0.00 | 8 | 10.0 | $5.82 | | | |
| Project Manager | 50.03 | 0 | 0.0 | $0.00 | 0 | 0.0 | $0.00 | 0 | 0.0 | $0.00 | | | |
| Chief Structural Engineer | 58.16 | 0 | 0.0 | $0.00 | 0 | 0.0 | $0.00 | 0 | 0.0 | $0.00 | | | |
| Senior Project Engineer | 43.94 | 0 | 0.0 | $0.00 | 0 | 0.0 | $0.00 | 0 | 0.0 | $0.00 | | | |
| Project Engineer | 40.25 | 60 | 41.7 | $16.77 | 80 | 100.0 | $40.25 | 36 | 45.0 | $18.11 | | | |
| Design Engineer III | 34.95 | 0 | 0.0 | $0.00 | 0 | 0.0 | $0.00 | 0 | 0.0 | $0.00 | | | |
| Design Engineer II | 29.58 | 0 | 0.0 | $0.00 | 0 | 0.0 | $0.00 | 0 | 0.0 | $0.00 | | | |
| Design Engineer I | 24.35 | 0 | 0.0 | $0.00 | 0 | 0.0 | $0.00 | 0 | 0.0 | $0.00 | | | |
| Survey Crew Chief | 27.96 | 0 | 0.0 | $0.00 | 0 | 0.0 | $0.00 | 0 | 0.0 | $0.00 | | | |
| Senior Engineering Tech. | 29.80 | 60 | 41.7 | $12.42 | 0 | 0.0 | $0.00 | 36 | 45.0 | $13.41 | | | |
| CADD Technician III | 25.01 | 0 | 0.0 | $0.00 | 0 | 0.0 | $0.00 | 0 | 0.0 | $0.00 | | | |
| CADD Technician II | 24.25 | 0 | 0.0 | $0.00 | 0 | 0.0 | $0.00 | 0 | 0.0 | $0.00 | | | |
| CADD Technician I | 16.28 | 0 | 0.0 | $0.00 | 0 | 0.0 | $0.00 | 0 | 0.0 | $0.00 | | | |
| Word Processor/Admin. | 20.68 | 0 | 0.0 | $0.00 | 0 | 0.0 | $0.00 | 0 | 0.0 | $0.00 | | | |
| TOTALS | | 144 | 100.0 | $38.90 | 80 | 100.0 | $40.25 | 80 | 100.0 | $37.34 | | | |

| PAYROLL CLASSIFICATION | AVG HOURLY RATES | ITEM 5 | | | ITEM 6 | | | ITEM 7 | | | TOTALS | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | HOURS | % PART. | WGTD RATE | HOURS | % PART. | WGTD RATE | HOURS | % PART. | WGTD RATE | HOURS | % PART. | WGTD RATE |
| Principal In Charge | 60.00 | | | | | | | | | | 0 | 0.0 | $0.00 |
| Senior Project Manager | 58.24 | | | | | | | | | | 32 | 10.5 | $6.13 |
| Project Manager | 50.03 | | | | | | | | | | 0 | 0.0 | $0.00 |
| Chief Structural Engineer | 58.16 | | | | | | | | | | 0 | 0.0 | $0.00 |
| Senior Project Engineer | 43.94 | | | | | | | | | | 0 | 0.0 | $0.00 |
| Project Engineer | 40.25 | | | | | | | | | | 176 | 67.9 | $23.30 |
| Design Engineer III | 34.95 | | | | | | | | | | 0 | 0.0 | $0.00 |
| Design Engineer II | 29.58 | | | | | | | | | | 0 | 0.0 | $0.00 |
| Design Engineer I | 24.35 | | | | | | | | | | 0 | 0.0 | $0.00 |
| Survey Crew Chief | 27.96 | | | | | | | | | | 0 | 0.0 | $0.00 |
| Senior Engineering Tech. | 29.80 | | | | | | | | | | 96 | 31.6 | $9.41 |
| CADD Technician III | 25.01 | | | | | | | | | | 0 | 0.0 | $0.00 |
| CADD Technician II | 24.25 | | | | | | | | | | 0 | 0.0 | $0.00 |
| CADD Technician I | 16.28 | | | | | | | | | | 0 | 0.0 | $0.00 |
| Word Processor/Admin. | 20.68 | | | | | | | | | | 0 | 0.0 | $0.00 |
| TOTALS | | | | | | | | | | | 304 | 100.0 | $38.84 |