## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **EXXONMOBIL OIL CORPORATION,**<br>A New York Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **D CONSTRUCTION MANAGEMENT**<br>**COMPANY, INC.,** an Illinois Corporation, et al., | ) | No. 08 CV 3064 |
| | ) | |
| Defendants. | ) | |

### TRANSYSTEMS CORPORATION'S
### ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT

NOW COMES Defendant, Transystems Corporation, by its counsel, Vanek, Vickers & Masini, P.C., and for its Answer and Affirmative Defenses to Plaintiff's Complaint, states as follows:

### THE PARTIES

1.     At all times relevant hereto Plaintiff, EMOC, a New York corporation with its principal place of business and executive headquarters located in Houston, Texas, was a duly registered foreign corporation in the State of Illinois engaged in the petrochemical, petroleum and related industries.

**Answer**:     This Defendant lacks sufficient knowledge to either admit or deny the allegations set forth in Paragraph 1 of the Complaint, but demands strict proof thereof.

2.     EMOC owns and operates a refinery located on both sides of Arsenal Road, Channahon, Will County, Illinois.

**Answer:**     This Defendant lacks sufficient knowledge to either admit or deny the allegations set forth in Paragraph 2 of the Complaint, but demands strict proof thereof.

3.     At all times relevant hereto Defendant, Transystems, a Missouri corporation with its principal place of business and executive headquarters located in Kansas City, Missouri, was engaged in providing engineering services related to the planning, design and execution of large scale commercial transportation and intermodal facilities and projects.

**Answer:**     This Defendant denies that, at all times relevant, it provided engineering services related to the execution of large scale commercial transportation and intermodal facilities and projects.  Answering further, this Defendant admits the remaining allegations set forth in Paragraph 3 of the Complaint.

4.     At all times relevant hereto Defendant, CTE, a Delaware corporation with its principal place of business and executive headquarters located in Chicago, Illinois, was a corporation engaged in providing construction management and engineering overnight services.

**Answer:**     This Defendant lacks sufficient knowledge to either admit or deny the allegations set forth in Paragraph 4 of the Complaint, but demands strict proof thereof.

5.     At all times relevant hereto Defendant, D Construction, an Illinois corporation with its principal place of business and executive headquarters in Coal City, Illinois, was a corporation engaged in providing general contracting, excavation and road construction services.

**Answer:**     This Defendant lacks sufficient knowledge to either admit or deny the allegations set forth in Paragraph 5 of the Complaint,  but demands strict proof thereof.

2

6.    At all times relevant hereto Defendant, PT Ferro, an Illinois corporation with its

principal place of business and executive headquarters in Joliet, Illinois, was a corporation engaged

in providing general contracting, subcontracting, excavation and road construction services.

**Answer**:    This Defendant lacks sufficient knowledge to either admit or deny the

allegations set forth in Paragraph 6 of the Complaint, but demands strict proof thereof.

### OPERATIVE FACTS

7.    The present dispute involves the cutting of private electric lines owned by EMOC

during a roadway reconstruction project commissioned by the County of Will.

**Answer**:    This Defendant lacks sufficient knowledge to either admit or deny the

allegations set forth in Paragraph 7 of the Complaint, but demands strict proof thereof.

8.    Plaintiff EMOC's Joliet Refinery borders I-55 and is approximately 2 miles south of

the intersection of I-55 and I-80, two of the major interstate highways in the United States.  The

Joliet Refinery is also bisected by Arsenal Road, an east-west thoroughfare that was a minor arterial

roadway prior to the road project at issue.

**Answer**:    This Defendant denies that EMOC's Joliet Refinery is approximately 2 miles

south of the intersection of I-55 and I-80.  Answering further, this Defendant admits the remaining

allegations set forth in Paragraph 8 of the Complaint.

9.    After the Department of Defense decommissioned the Joliet Arsenal in the mid-

1990's, a plan was developed by the County of Will to transform part of the former Joliet Arsenal

into the world's largest intermodal facility, connecting train, truck and barge traffic.

**Answer**:    This Defendant lacks sufficient knowledge to either admit or deny the

allegations set forth in Paragraph 9 of the Complaint, but demands strict proof thereof.

3

10.    As part of this redevelopment, Arsenal Road needed to be replaced and substantially widened so that container trucks and other heavy commercial traffic could gain access to and-and-from the intermodal facility.

**Answer**:    This Defendant lacks sufficient knowledge to either admit or deny the allegations set forth in Paragraph 10 of the Complaint, but demands strict proof thereof.

11.    In connection with this plan, Defendant Transystems was awarded the engineering and design contract by the County of Will to plan, develop and design the replacement and widening of Arsenal Road.

**Answer**:    This Defendant admits the allegations set forth in Paragraph 11 of the Complaint.

12.    Defendant CTE was awarded to contract by the County of Will to act as the project coordinator and construction manager for the reconstruction of Arsenal Road.

**Answer**:    This Defendant lacks sufficient knowledge to either admit or deny the allegations set forth in Paragraph 12 of the Complaint, but demands strict proof thereof.

13.    Defendant D Construction was hired by the County of Will to act as the general contractor and employed Defendant PT Ferro as a subcontractor to, in part, excavate and remove the existing pavement for the Arsenal Project.

**Answer**:    This Defendant lacks sufficient knowledge to either admit or deny the allegations set forth in Paragraph 13 of the Complaint, but demands strict proof thereof.

14.    As the engineering firm for the Arsenal Road Project, Defendant Transystems was required to produce plans and schematics showing all of the underground utilities along side, over

4

and underneath Arsenal Road so that excavation and construction would not damage any existing utilities or trespass upon any private property.

**Answer**:    This Defendant admits that as the engineering design firm for the Arsenal Road project, it was required, by contract, to produce plans and schematics showing the known underground utilities, which, upon reasonable investigation and due diligence could be discovered, alongside, over and underneath Arsenal Road so that excavation and construction would not damage any existing utilities or trespass upon any private property. Answering further, this Defendant denies the remaining allegations set forth in Paragraph 14 of the Complaint.

15.    As the project manager for the Arsenal Road Project, Defendant CTE was required to coordinate information between and among Will County, Defendant D Construction, Defendant PT Ferro and Defendant Transystems and property owners along Arsenal Road so that the excavation and construction would not damage any existing utilities or trespass upon any private property.

**Answer**:    This Defendant lacks sufficient knowledge to either admit or deny the allegations set forth in Paragraph 15 of the Complaint, but demands strict proof thereof.

16.    On or about May 24, 2007, during construction on the Arsenal Road Project, Defendant PT Ferro encountered two sets of stainless steel electrical conduit lines belonging to Plaintiff EMOC underneath Arsenal Road. These conduits run between two sections of Plaintiff EMOC's property located on either side of Arsenal Road.

**Answer**:    This Defendant lacks sufficient knowledge to either admit or deny the allegations set forth in Paragraph 16 of the Complaint, but demands strict proof thereof.

5

17.    The existence and location of such lines were well known to all Defendants, as EMOC received a permit from the County of Will Highway Department, Application Permit #A179504, on June 7, 1995, and which records and schematics were open and available for inspection, and a matter of public record.

**Answer**:    Insofar as the allegations set forth in Paragraph 17 of the Complaint are directed against this Defendant, this Defendant denies those allegations. Answering further, to the extent the allegations in Paragraph 17 are directed against other Defendants, this Defendant lacks sufficient knowledge to either admit or deny those allegations, but demands strict proof thereof.

18.    Both sets of Plaintiff EMOC's conduit lines were encased in steel tubing with an outer concrete covering.

**Answer**:    This Defendant lacks sufficient knowledge to either admit or deny the allegations set forth in Paragraph 18 of the Complaint, but demands strict proof thereof.

19.    Each set of Plaintiff EMOC's conduit lines contained three heavy gauge copper electrical lines.

**Answer**:    This Defendant lacks sufficient knowledge to either admit or deny the allegations set forth in Paragraph 19 of the Complaint, but demands strict proof thereof.

20.    Upon encountering the first set of concrete and steel tubing, Defendant PT Ferro continued to dig, breaking the electrical lines' outer concrete and inner steel casing.

**Answer**:    This Defendant lacks sufficient knowledge to either admit or deny the allegations set forth in Paragraph 20 of the Complaint, but demands strict proof thereof.

6

21.    After breaching the casings, Defendant PT Ferro pulled the first set of electrical lines from their moorings at the transformer, short circuiting the electricity, causing a power outage to Plaintiff EMOC's water filtration plant.

**Answer**:    This Defendant lacks sufficient knowledge to either admit or deny the allegations set forth in Paragraph 21 of the Complaint, but demands strict proof thereof.

22.    After pulling the first set of lines from their moorings, Defendant PT Ferro sawed through the lines with some type of industrial equipment and then continued their roadway excavation without delay.

**Answer**:    This Defendant lacks sufficient knowledge to either admit or deny the allegations set forth in Paragraph 22 of the Complaint, but demands strict proof thereof.

23.    Defendant PT Ferro then immediately encountered the second set of EMOC electrical lines, and again pulled these lines partially from their moorings.  However, Defendant PT Ferro refrained from cutting this second set of electric lines as EMOC employees rushed to the construction site and demanded that Defendant PT Ferro cease its activities.

**Answer**:    This Defendant lacks sufficient knowledge to either admit or deny the allegations set forth in Paragraph 23 of the Complaint, but demands strict proof thereof.

24.    Because the second set of lines was not cut, EMOC employees were able to temporarily restore power to the filtration plant and thus avoid a shutdown of the refinery.  The total damages incurred by EMOC in the repair and replacement of the damaged electrical lines is approximately $950,000.

**Answer**:    This Defendant lacks sufficient knowledge to either admit or deny the allegations set forth in Paragraph 24 of the Complaint, but demands strict proof thereof.

## JURISDICTION AND VENUE

25.    Jurisdiction is based upon diversity of citizenship of the parties and the amount in controversy pursuant to 28 U.S.C. §1332.

**Answer:**    This Defendant admits the allegations set forth in Paragraph 25 of the Complaint.

26.    Plaintiff EMOC is a New York corporation with its principal place of business and executive headquarters in the State of Texas.

**Answer:**    This Defendant lacks sufficient knowledge to either admit or deny the allegations set forth in Paragraph 26 of the Complaint, but demands strict proof thereof.

27.    Defendant D Construction is an Illinois corporation with its principal place of business and executive headquarters in the State of Illinois.

**Answer:**    This Defendant lacks sufficient knowledge to either admit or deny the allegations set forth in Paragraph 27 of the Complaint, but demands strict proof thereof.

28.    Defendant PT Ferro is an Illinois corporation with its principal place of business and executive headquarters in the State of Illinois.

**Answer:**    This Defendant lacks sufficient knowledge to either admit or deny the allegations set forth in Paragraph 28 of the Complaint, but demands strict proof thereof.

29.    Defendant Transystems in a Missouri corporation with its principal place of business and executive headquarters in the State of Missouri.

**Answer:**    This Defendant admits the allegations set forth in Paragraph 29 of the Complaint.

8

30.    Defendant CTE is a Delaware corporation with its principal place of business and executive headquarters in the State of Illinois.

**Answer:**    This Defendant lacks sufficient knowledge to either admit or deny the allegations set forth in Paragraph 30 of the Complaint, but demands strict proof thereof.

31.    The amount in controversy exceeds the sum of seventy-five thousand dollars ($75,000) exclusive of costs and interest.

**Answer:**    This Defendant lacks sufficient knowledge to either admit or deny the allegations set forth in Paragraph 31 of the Complaint, but demands strict proof thereof.

## COUNT I - TRESPASS (PT FERRO)

This Defendant makes no answer to the allegations set forth in Count I of the Complaint as said allegations are not directed against it. To the extent any of the allegations contained therein are directed against this Defendant, said allegations are denied.

## COUNT II - NEGLIGENCE (D CONSTRUCTION)

This Defendant makes no answer to the allegations set forth in Count II of the Complaint as said allegations are not directed against it. To the extent any of the allegations contained therein are directed against this Defendant, said allegations are denied.

## COUNT III - NEGLIGENCE (PT FERRO)

This Defendant makes no answer to the allegations set forth in Count III of the Complaint as said allegations are not directed against it. To the extent any of the allegations contained therein are directed against this Defendant, said allegations are denied.

9

## COUNT IV - NEGLIGENCE (TRANSYSTEMS CORPORATION)

44.    Paragraphs 1 - 31 of this Complaint are incorporated by reference in this Count IV and repeated herein as if fully stated.

**Answer:**    This Defendant restates and incorporates by reference its answers to Paragraphs 1 - 31 of the Complaint for its answer to Paragraph 44 of Count IV of the Complaint as though fully set forth herein.

45.    At all times relevant hereto Defendant Transystems owed to the Plaintiff, EMOC, the duty to use reasonable care in the planning, design and coordination for the excavation, construction and improvement of Arsenal Road, Will County, Illinois.

**Answer:**    This Defendant admits all legal duties imposed upon it by Illinois law, but denies that said duties have been accurately or properly alleged in Paragraph 45 of Count IV.

46.    In the breach of such duty of reasonable care, Defendant Transystems committed one or more of the following acts or omissions:

A.    Failed to properly identify Plaintiff EMOC's property alongside and under Arsenal Road;

B.    Failed to properly establish procedures to collect and disseminate data for subsurface utilities;

C.    Failed to properly protect Plaintiff EMOC's property from damage; and

D.    Failed to properly hire, supervise and train employees and subcontractors to prevent damage to Plaintiff EMOC's property.

**Answer:**    This Defendant denies the allegations set forth in Paragraph 46 of Count IV, including the allegations set forth in subparagraphs (A) through (D).

10

47.    As a direct and proximate cause of one or more of the foregoing negligent acts or omissions by Defendant Transystems Corporation, Plaintiff EMOC's property was damaged causing economic losses, expenses and property damage.

**Answer:**    This Defendant denies the allegations set forth in Paragraph 47 of Count IV of the Complaint.

WHEREFORE, Defendant, Transystems Corporation, denies that Plaintiff, Exxon Mobil Oil Corporation, is entitled to any judgment or recovery against Transystems Corporation and, therefore, prays that judgment be entered in its favor and against Plaintiff, and that it be awarded its costs of suit sustained in defending this action.

## AFFIRMATIVE DEFENSES TO COUNT IV

### First Affirmative Defense

Plaintiff's alleged damages, if any, were proximately caused by the intervening and superseding acts and/or omissions of others not within the employ or control of this Defendant.

### Second Affirmative Defense

1.    Prior to and at the time of the occurrence alleged in Plaintiff's Complaint, Plaintiff was under a duty to use ordinary and reasonable care for the protection and safety of its property, including its subsurface, electrical utility lines.

2.    During the course of the Arsenal Road project, Exxon Mobil representatives communicated with Transystems Corporation extensively regarding the existence and location of utility lines privately owned by and under the exclusive care and control of Exxon Mobil.

11

3.      In addition to the extensive communication between Transystems and Exxon Mobil, Transystems' design drawings, including, but not limited to, the utility plan, were furnished to Exxon Mobil for its review.

4.      At no time prior to the occurrence alleged in Plaintiff's Complaint, did Exxon Mobil ever advise Transystems regarding the existence of the electrical lines at issue in this case.

5.      If Plaintiff sustained damage as alleged in the Complaint, said damages were sustained, in whole or in part, as a direct and proximate result of Plaintiff's breach of duty when Plaintiff remained silent and failed to inform Transystems of the existence of the subsurface utility lines at issue in this case.

WHEREFORE, Defendant, Transystems Corporation, prays for entry of an Order dismissing Count IV of Plaintiff's Complaint with prejudice or alternatively, if a verdict or judgment for damages is rendered against Transystems Corporation in this case (which Transystems Corporation has denied and continues to deny), Transystems Corporation is entitled to a reduction in the amount of such damages by an amount equal to the percentage that Plaintiff, Exxon Mobil Corporation's negligence or fault contributed to such damages and, furthermore, if Plaintiff's negligence or fault is found to have contributed more than fifty percent (50%), Plaintiff shall be barred from recovery any damages from Defendant, Transystems Corporation and Count IV of the Complaint at Law must be dismissed with prejudice. Defendant, Transystems Corporation, further prays for recovery of its costs sustained herein and for such other relief as this Court deems necessary and just.

## COUNT V - NEGLIGENCE
## (CONSOER TOWNSEND ENVIRODYNE ENGINEERS, INC.)

This Defendant makes no answer to the allegations set forth in Count V of the Complaint as said allegations are not directed against it. To the extent any of the allegations contained therein are directed against this Defendant, said allegations are denied.


/s/ Scott A. Ruksakiati


Scott A. Ruksakiati
VANEK, VICKERS & MASINI, P.C.
111 S. Wacker Drive, Suite 4050
Chicago, IL 60606
(312) 224-1500

*Attorneys for Defendant, Transystems Corporation*


n:\08-0165\Pleadings\answer to complaint

13