IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EXXONMOBIL OIL CORPORATION, ) <br> A New York Corporation ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> D CONSTRUCTION MANAGEMENT ) <br> COMPANY, INC., an Illinois Corporation, and ) <br> PT FERRO CONSTRUCTION COMPANY, ) <br> INC., An Illinois Corporation, and ) <br> TRANSYSTEMS CORPORATION, a ) <br> Missouri Corporation, and CONSOER ) <br> TOWNSEND ENVIRODYNE ENGINEERS, ) <br> INC., a Delaware Corporation ) <br> ) <br> Defendants. ) | Case No. 08 CV 3064 <br><br> Judge Norgle <br><br> Magistrate Judge Schenkier |

### ANSWER AND AFFIRMATIVE DEFENSES OF CONSOER TOWNSEND ENVIRODYNE ENGINEERS, INC. TO THE COMPLAINT OF EXXONMOBIL OIL CORPORATION

Consoer Townsend Envirodyne Engineers, Inc. ("CTE"), by and through its attorneys, Seyfarth Shaw LLP, and for its answer to the Complaint of ExxonMobil Oil Corporation ("EMOC"), states as follows:

### THE PARTIES

1.  At all times relevant hereto Plaintiff, EMOC, a New York Corporation with its principal place of business and executive headquarters located in Houston, Texas, was a duly registered foreign corporation in the State of Illinois engaged in the petrochemical, petroleum and related industries.

**ANSWER:** CTE lacks knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 1 of the Complaint, and, therefore, neither admits nor denies them.

2.  EMOC owns and operates a refinery located on both sides of Arsenal Road, Channahon, Will County, Illinois.

CH3 1138089.1

**ANSWER:** On information and belief, CTE admits that EMOC operates a refinery located on both sides of Arsenal Road in Channahon, Will County, Illinois. CTE lacks knowledge sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 2 of the Complaint, and, therefore, neither admits nor denies them.

3. At all times relevant hereto Defendant Transystems, a Missouri Corporation with its principal place of business and executive headquarters located in Kansas City, Missouri, was [sic] corporation engaged in providing engineering services related to the planning, design and execution of large scale commercial transportation and intermodal facilities and projects.

**ANSWER:** CTE lacks knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 3 of the Complaint, and, therefore, neither admits nor denies them.

4. At all times relevant hereto Defendant CTE, a Delaware Corporation with its principal place of business and executive headquarters located in Chicago, Illinois, was a corporation engaged in providing construction management and engineering oversight services.

**ANSWER:** CTE admits that it is a Delaware Corporation with its principal place of business and executive headquarters located in Chicago, Illinois. CTE denies the remaining allegations contained in paragraph 4 of the Complaint.

5. At all times relevant hereto Defendant D Construction, an Illinois Corporation with its principal place of business and executive headquarters in Coal City, Illinois, was a corporation engaged in providing general contracting, excavation, and road construction services.

**ANSWER:** CTE lacks knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 5 of the Complaint, and, therefore, neither admits nor denies them.

6. At all times relevant hereto Defendant PT Ferro, an Illinois Corporation with its principal place of business and executive headquarters in Joliet, Illinois, was a corporation engaged in providing contracting, subcontracting, excavation, and road construction services.

**ANSWER:** CTE lacks knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 6 of the Complaint, and, therefore, neither admits nor denies them.

## OPERATIVE FACTS

7.  The present dispute involves the cutting of private electric lines owned by EMOC during a roadway reconstruction project commissioned by the County of Will.

**ANSWER:** On information and belief, CTE admits that the present dispute involves the cutting of utility lines during a roadway reconstruction project commissioned by the County of Will. CTE lacks knowledge sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 7 of the Complaint, and, therefore, neither admits nor denies them.

8.  Plaintiff EMOC'S Joliet Refinery borders I-55 and is approximately 2 miles south of the intersection of I-55 and I-80, two of the major interstate highways in the United States. The Joliet Refinery is also bisected by Arsenal Road, an east-west thoroughfare that was a minor arterial roadway prior to the road project at issue.

**ANSWER:** On information and belief, CTE denies that EMOC'S Joliet Refinery is approximately 2 miles south of the intersection of I-55 and I-80. CTE admits the remaining allegations contained in paragraph 8 of the Complaint.

9.  After the Department of Defense decommissioned the Joliet Arsenal in the mid-1990's, a plan was developed by the County of Will to transform part of the former Joliet Arsenal into the world's largest intermodal facility, connecting train, truck and barge traffic.

**ANSWER:** CTE lacks knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 9 of the Complaint, and, therefore, neither admits nor denies them.

10.  As part of this redevelopment, Arsenal Road needed to be replaced and substantially widened so that container trucks and other heavy commercial traffic could gain access to-and-from the intermodal facility.

**ANSWER:** CTE lacks knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 10 of the Complaint, and, therefore, neither admits nor denies them.

11.  In connection with this plan, Defendant Transystems was awarded the engineering and design contract by the County of Will to plan, develop and design the replacement and widening of Arsenal Road.

**ANSWER:** CTE lacks knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 11 of the Complaint, and, therefore, neither admits nor denies them.

12. Defendant CTE was awarded to [sic] contract by the County of Will to act as the project coordinator and construction manager for the reconstruction of Arsenal Road.

**ANSWER:** CTE denies the allegations contained in paragraph 12 of the Complaint.

13. Defendant D Construction was hired by the County of Will to act as the general contractor and employed Defendant PT Ferro as a subcontractor to, in part, excavate and remove the existing pavement for the Arsenal Project.

**ANSWER:** On information and belief, CTE admits the allegations contained in paragraph 13 of the Complaint.

14. As the engineering firm for the Arsenal Road Project, Defendant Transystems was required to produce plans and schematics showing all of the underground utilities along side, over and underneath Arsenal Road so that excavation and construction would not damage any existing utilities or trespass upon any private property.

**ANSWER:** CTE lacks knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 14 of the Complaint, and, therefore, neither admits nor denies them.

15. As the project manager for the Arsenal Road Project, Defendant CTE was required to coordinate information between and among Will County, Defendant D Construction, Defendant PT Ferro, and Defendant Transystems and property owners along Arsenal Road so that the excavation and construction would not damage any existing utilities or trespass upon any private property.

**ANSWER:** CTE denies the allegations contained in paragraph 15 of the Complaint.

16. On or about May 24, 2007, during construction on the Arsenal Road Project, Defendant PT Ferro encountered two sets of stainless steel electrical conduit lines belonging to Plaintiff EMOC underneath Arsenal Road. These conduits run between two sections of Plaintiff EMOC's property located on either side of Arsenal Road.

**ANSWER:** On information and belief, CTE admits that on or about May 24, 2007, during construction on the Arsenal Road Project, Defendant PT Ferro encountered utility lines underneath Arsenal Road. CTE lacks knowledge sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 16 of the Complaint, and, therefore, neither admits nor denies them.

17. The existence and location of such lines were well known to all defendants, as EMOC received a permit from the County of Will Highway Department, Application Permit #A179504, on June 7, 1995, and which records and schematics were open and available for inspection, and a matter of public records.

**ANSWER:** CTE denies that the existence and location of such lines were well known to it. CTE lacks knowledge sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 17 of the Complaint, and, therefore, neither admits nor denies them.

18. Both sets of Plaintiff EMOC's conduit lines were encased in steel tubing with an outer concrete covering.

**ANSWER:** CTE admits that the utility lines encountered underneath Arsenal Road during construction on the Arsenal Road Project were encased in steel tubing. CTE lacks knowledge sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 18 of the Complaint, and, therefore, neither admits nor denies them.

19. Each set of Plaintiff EMOC's conduit lines contained three heavy gauge copper lines.

**ANSWER:** CTE lacks knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 19 of the Complaint, and, therefore, neither admits nor denies them.

20. Upon encountering the first set of concrete and steel tubing, Defendant PT Ferro continued to dig, breaking the electrical lines' outer concrete and inner steel casing.

**ANSWER:** CTE lacks knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 20 of the Complaint, and, therefore, neither admits nor denies them.

21. After breaching the casings, Defendant PT Ferro pulled the first set of electrical lines from their moorings at the transformer, short circuiting the electricity, causing a power outage to Plaintiff EMOC's water filtration plant.

**ANSWER:** CTE lacks knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 21 of the Complaint, and, therefore, neither admits nor denies them.

22. After pulling the first set of lines from their moorings, Defendant PT Ferro sawed through the lines with some type of industrial equipment, and then continued their roadway excavation without delay.

**ANSWER:** CTE lacks knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 22 of the Complaint, and, therefore, neither admits nor denies them.

23. Defendant PT Ferro then immediately encountered the second set of EMOC electrical lines, and again pulled these lines partially from their moorings. However, Defendant PT Ferro refrained from cutting this second set of electric lines as EMOC employees rushed to the construction site and demanded that Defendant PT Ferro cease its activities.

**ANSWER:** CTE lacks knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 23 of the Complaint, and, therefore, neither admits nor denies them.

24. Because the second set of lines was not cut, EMOC employees were able to temporarily restore power to the filtration plant, and thus avoid a shutdown of the refinery. The total damages incurred by EMOC in the repair and replacement of the electrical lines is approximately $950,000.

**ANSWER:** CTE lacks knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 24 of the Complaint, and, therefore, neither admits nor denies them.

## JURISDICTION AND VENUE

25. Jurisdiction is based upon diversity of citizenship of the parties and the amount in controversy pursuant to 28 U.S.C. §1332.

**ANSWER:** CTE admits the allegations contained in paragraph 25 of the Complaint.

26. Plaintiff EMOC is a New York Corporation with its principal place of business and executive headquarters in the State of Texas.

**ANSWER:** CTE lacks knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 26 of the Complaint, and, therefore, neither admits nor denies them.

27. Defendant D Construction is an Illinois corporation with its principal place of business and executive headquarters in the State of Illinois. .

**ANSWER:** CTE lacks knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 27 of the Complaint, and, therefore, neither admits nor denies them.

28. Defendant PT Ferro is an Illinois corporation with its principal place of business and executive headquarters in the State of Illinois.

**ANSWER:** CTE lacks knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 28 of the Complaint, and, therefore, neither admits nor denies them.

29. Defendant Transystems is an [sic] Missouri Corporation with its principal place of business and executive headquarters in the State of Missouri.

**ANSWER:** CTE lacks knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 29 of the Complaint, and, therefore, neither admits nor denies them.

30. Defendant CTE is an [sic] Delaware corporation with its principal place of business and executive headquarters in the State of Illinois.

**ANSWER:** CTE admits the allegations contained in paragraph 30 of the Complaint.

31. The amount in controversy exceeds the sum of seventy-five thousand dollars ($75,000) exclusive of costs and interests.

**ANSWER:** CTE lacks knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 31 of the Complaint, and, therefore, neither admits nor denies them.

### COUNT I – TRESPASS (PT FERRO)

Count I is not directed to CTE and, therefore, CTE does not answer it. To the extent any of the allegations contained in paragraphs 33 through 35 of Count I are construed to be directed at CTE, CTE denies those allegations.

### COUNT II – NEGLIGENCE (D CONSTRUCTION)

Count II is not directed to CTE and, therefore, CTE does not answer it. To the extent any of the allegations contained in paragraphs 37 through 39 of Count II are construed to be directed at CTE, CTE denies those allegations.

### COUNT III – NEGLIGENCE (PT FERRO)

Count III is not directed to CTE and, therefore, CTE does not answer it. To the extent any of the allegations contained in paragraphs 41 through 43 of Count III are construed to be directed at CTE, CTE denies those allegations.

### COUNT IV – NEGLIGENCE (TRANSYSTEMS CORPORATION

Count IV is not directed to CTE and, therefore, CTE does not answer it. To the extent any of the allegations contained in paragraphs 45 through 47 of Count IV are construed to be directed at CTE, CTE denies those allegations.

### COUNT V – NEGLIGENCE (CONSOER TOWNSEND ENVIRODYNE ENGINEERS, INC.)

48. Paragraphs 1-31 of this Complaint are incorporated by reference in this Count V, and repeated herein as if fully restated.

**ANSWER:** CTE realleges and reaffirms its answers to paragraphs 1 through 31 as its answer to paragraph 48 of this Count V as though fully stated here.

49.     At all times relevant hereto Defendant CTE owed to the Plaintiff EMOC the duty to use reasonable care in the supervision of the excavation, construction and improvement of Arsenal Road, Will County, Illinois.

**ANSWER:** CTE denies the allegations contained in paragraph 49 of Count V of the Complaint.

50.     In the breach of such duty of reasonable care, Defendant CTE committed one or more of the following omissions:

    A.    Failed to properly identify Plaintiff EMOC's property along side and under Arsenal Road;

    B.    Failed to properly follow established procedures to collect and disseminate data for subsurface utilities;

    C.    Failed to properly protect Plaintiff EMOC's property from damage;

    D.    Failed to properly coordinate, supervise and train employees, subcontractors and contractor to prevent damage to Plaintiff EMOC's property;

    E.    Failed to undertake and implement safety procedures and protocols, and to disseminate same to contractors and subcontractors requiring that that [sic] they (contractors and subcontractors) immediately cease all work upon encountering unknown facilities while working adjacent to the refinery.

**ANSWER:** CTE denies the allegations contained in paragraph 50, including subparagraphs 50(A) through 50(E), of Count V of the Complaint.

51.     As a direct and proximate cause of one or more of the foregoing negligent acts or omissions by Defendant CTE that Plaintiff EMOC's property was damaged causing economic losses, expenses, and property damage.

**ANSWER:** CTE denies the allegations contained in paragraph 51 of Count V of the Complaint.

WHEREFORE, Consoer Townsend Envirodyne Engineers, Inc. requests that judgment be entered in its favor and against ExxonMobil Oil Corporation and that it be awarded such other relief as the Court may deem proper.

## AFFIRMATIVE DEFENSES TO COUNT V

**First Affirmative Defense**

Any alleged damages that EMOC may have incurred were caused by the acts or omissions of others who were neither employed nor controlled by CTE.

**Second Affirmative Defense**

1. At all relevant times, EMOC had a duty to use ordinary and reasonable care for the protection and safety of its property.

2. On information and belief, during the course of the Arsenal Road Project, representatives of EMOC participated in extensive communications with Transystems Corporation regarding the existence and location of utility lines related to EMOC's property.

3. On information and belief, during the time period when Transystems Corporation was designing the Arsenal Road Project, EMOC was provided copies of utility plans developed by Transystems Corporation related to the construction project to replace and widen Arsenal Road.

4. Despite having knowledge of where the construction would occur, including the removal of existing roadway and the excavation for the new roadway, on information and belief, EMOC never informed anyone of the existence of the subsurface utility lines at issue.

5. EMOC installed, or caused to be installed, the utility lines at issue in such a manner that the damage to the utility lines during ordinary maintenance and construction related to the roadway was reasonably foreseeable.

6. On information and belief, EMOC failed to participate in Illinois' State-Wide-One-Call Notice System ("J.U.L.I.E.") and failed to notify J.U.L.I.E. of the existence and location of the utility lines at issue.

7.  On further information and belief, EMOC was required by statute to notify J.U.L.I.E. of the existence and location of the utility lines at issue and, by failing to have done so, may be prima facie guilty of negligence.

8.  If EMOC has been damaged as alleged in its Complaint, then those damages were caused as a result of EMOC's breach of its duty to use ordinary and reasonable care for the protection and safety of its property.

**Third Affirmative Defense**

1.  EMOC, in its Complaint, has alleged that CTE was responsible for certain duties in relation to the construction project that is the subject of its Complaint.

2.  EMOC, in its Complaint, has alleged that various acts or omissions on the part of CTE breached those duties and caused EMOC to be damaged.

3.  Neither the alleged duties, nor the acts or omissions that EMOC alleges caused it to be damaged, were CTE's responsibility under the contract it executed for the engineering services it performed related to the construction project that is the subject of its Complaint.

4.  Consequently, if EMOC has been damaged as alleged in its Complaint, then those damages were not caused by CTE.

**Fourth Affirmative Defense**

1.  EMOC, in its Complaint, has alleged that CTE was responsible for certain duties in relation to the construction project that is the subject of its Complaint.

2.  EMOC, in its Complaint, has alleged that various acts or omissions on the part of CTE breached those duties and caused EMOC to be damaged.

3.  To the extent any of those alleged duties, or the acts or omissions that EMOC alleges caused it to be damaged, are imputed to CTE as an agent of Will County, then CTE is entitled to qualified immunity pursuant to 745 ILCS 10/1-101 *et seq.*

4. Consequently, if EMOC has been damaged as alleged in its Complaint, then CTE cannot be held responsible for those damages.

WHEREFORE, Consoer Townsend Envirodyne Engineers, Inc. prays that the Court enter an Order awarding judgment in favor of Consoer Townsend Envirodyne Engineers, Inc. and against ExxonMobil Oil Corporation. In the alternative, if a judgment is entered in favor of ExxonMobil Oil Corporation and against Consoer Townsend Envirodyne Engineers, Inc., then Consoer Townsend Envirodyne Engineers, Inc. is entitled to a reduction in the amount of the damages by an amount equal to the percentage that the negligence or fault of ExxonMobil Oil Corporation contributed to its damages unless the contributory negligence of ExxonMobil Oil Corporation is determined to exceed fifty percent (50%), in which case ExxonMobil Oil Corporation shall be barred from recovering any damages from Consoer Townsend Envirodyne Engineers, Inc. Consoer Townsend Envirodyne Engineers, Inc. also prays that the Court provide such other and further relief as this Court deems just and equitable.

Respectfully submitted,

/s/ Scott J. Smith
Scott J. Smith (# 6238132)
Seyfarth Shaw LLP
131 S. Dearborn St.
Suite 2400
Chicago, IL  60603-5803
Telephone:  (312) 460-5000
Facsimile:  (312) 460-7000

Attorneys for Defendant Consoer Townsend Envirodyne Engineers, Inc.